**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DAVID L. ROBERTS,

      Petitioner,

v.                                    Case No. 8:14-cv-413-T-33EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner David L. Roberts, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1.) He challenges his conviction for burglary of an occupied dwelling, entered by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida, in 2008.  Respondent filed a response (Doc. 8), which raises no challenge to the timeliness of Roberts's petition. Roberts filed a reply (Doc. 11).  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

      A jury convicted Roberts of one count of burglary of an occupied dwelling.  (Doc. 10, Ex. 2.)  He was sentenced to fifteen years in prison as a prison releasee reoffender.  (Doc. 10, Ex. 3.)   The state appellate court *per curiam* affirmed Roberts's conviction and sentence.  (Doc. 10, Ex. 11.)[1]  Roberts filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, as well as two amendments to the motion.  (Doc. 10,

---

[1] During the pendency of his direct appeal, the trial court granted in part Roberts's motion to correct a sentencing error and struck or reduced several court costs.  (Doc. 10, Exs. 7, 8.)

Exs. 14, 15, 20.)  The state court denied Roberts's postconviction motion.  (Doc. 10, Ex. 21.)  The court subsequently denied his motion for rehearing.  (Doc. 10, Exs. 22, 23.)  The state appellate court *per curiam* affirmed the rejection of Roberts's postconviction motion. (Doc. 10, Ex. 25.)  His motions for rehearing and clarification were also denied.  (Doc. 10, Exs. 26, 27.)  Roberts filed in the state appellate court a petition for writ of mandamus, which that court construed as a notice of appeal and dismissed as untimely.  (Doc. 10, Exs. 28, 34.)[2]  His motion for rehearing or clarification was denied.  (Doc. 10, Ex. 35.)

## FACTUAL BACKGROUND[3]

The burglary occurred at the home of Gerardo Flores and Laura Barragan Cruz in Palmetto, Florida.   Roberts and Flores were familiar with one another, as Roberts performed some yard work and exterior maintenance at the home in exchange for food and soda.  Flores did not permit Roberts to enter the house when he was at the property.

On the morning of November 30, 2007, Flores left the house for work.  Later, Barragan Cruz was inside, watching television in the bedroom, when she heard the doorbell ring.  After waiting a few moments, she looked out from the front of the house.  She did not see anybody outside.  She noticed that the gate to the yard was closed. Barragan Cruz looked out a back window of the house but again saw no one present.  When she went back inside the bedroom, she saw Roberts standing in the room.

---

[2] The mandamus petition is partly titled "Optional Brief A."  (Doc. 10, Ex. 29.)  This pleading states that Roberts filed in support of his mandamus petition "Optional Brief B," which is a copy of a belated motion for postconviction relief that Roberts also filed in the state appellate court. (Doc. 10, Ex. 30.)  While the case style of Optional Brief B indicates it  was to be filed in the state circuit court, a review of the online docket for Roberts's state circuit court case reflects no entries indicating that it was filed or ruled upon in that court.

[3] This factual summary is derived from the evidence presented at trial and the briefs filed on direct appeal.

Barragan Cruz shouted and exited the house through the front door. Roberts also left through the front door, and continued walking down the street. Barragan Cruz called Flores, who came back to the house. On his way, Flores passed Roberts and the two men had some discussion. Flores asked Roberts why he went into the house, and Roberts denied going inside. As Barragan Cruz waited for Flores, she called police.

Police arrived at the house and observed that the window of the bathroom connected to Barragan Cruz's bedroom was open and the screen was removed. Detective Stephen Greer saw foot prints near the window. No doors or other windows were open. Flores told police where Roberts lived. Officers located Roberts in a closet inside his residence, underneath a pile of clothes. A brown plaid shirt matching a description provided by Barragan Cruz was found near him. Police brought Roberts back to Flores and Barragan Cruz's house, where Barragan Cruz identified him as the person who entered the house.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, _ U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In *per curiam* decisions without written opinions, the state appellate court affirmed Roberts's conviction and sentence, as well as the rejection of his postconviction motion. The state appellate court's *per curiam* decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398. Roberts bears the burden of overcoming by clear and convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).   This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A);  *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal

and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that

they worked to his actual and substantial disadvantage and infected the entire trial with

error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982).  The

petitioner must show at least a reasonable probability of a different outcome.  *Henderson*,

353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may also obtain federal habeas review of a procedurally defaulted claim

if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v.

Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.   A fundamental

miscarriage of justice occurs in an extraordinary case where a constitutional violation has

probably resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*,

513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

## DISCUSSION

The federal habeas petition is repetitive and disorganized.  Roberts does not identify

claims for relief with clarity or specificity.   However, the petition is liberally construed as

raising the ten grounds addressed below.

**Ground One: Sufficiency Of The Evidence:** "[I]n the instant case before this Honorable
Court the evidence did not support the alleged crime [o]f burglary of an occupied dwelling."
(Doc. 1, p. 20.)

Burglary is defined in relevant part as "[e]ntering a dwelling [or] a structure . . . with

the intent to commit an offense therein, unless the premises are at the time open to the

public or the defendant is licensed or invited to enter." § 810.02(1)(b)1., Fla. Stat.  Roberts

argues that the evidence presented at trial is insufficient to sustain a conviction for burglary.

(Doc. 1, pp. 6, 19-20, 23.)[4]   He claims that the evidence did not show he intended to

---

[4] Under a very liberal construction of Roberts's petition, he presents a federal claim through his
attempt to reference a holding of the United States Supreme Court. (Doc. 1, p. 19.)

commit an offense within the home of Flores and Barragan Cruz.

After the state rested its case, Roberts's trial counsel moved for a judgment of acquittal.  He argued that because the evidence did not "create an inference" that Roberts entered the residence to commit a crime, the State only showed unlawful entry.  (Doc. 10, Ex. 13, p. 183.)  In support, he noted that the evidence showed no objects in the home were moved or taken, that Roberts walked out of the residence "with" Barragan Cruz, and that Roberts encountered Flores on the street, spoke to him about the matter, and walked away.  (Id.)  The court denied the motion.  (Id., p. 184.)

On direct appeal, Roberts challenged the trial court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient.  The state appellate court rejected his claim when it *per curiam* affirmed the judgment and sentence.  Roberts did not raise a federal claim on direct appeal.  (Doc. 10, Ex. 9.)  Assuming that this claim is nevertheless exhausted,[5] Roberts is not entitled to relief.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."  *In re Winship*, 397 U.S. 358, 364 (1970).  The Supreme Court established the standard of review in a federal habeas corpus proceeding in which a

---

[5] A petitioner who does not specifically raise a federal claim when challenging the sufficiency of the evidence in state court may be able to exhaust a federal claim when the state and federal standards of review are identical.  *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 461 (11th Cir. 2015) (citing *Mulnix v. Sec'y, Dep't of Corr.*, 254 Fed.Appx. 763 (11th Cir. 2007)).  Florida utilizes a special standard of review for sufficiency of the evidence in a case involving wholly circumstantial evidence. "It is an age-old rule in Florida that '[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.'"  *Id.* at 460 (quoting *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000)).  Because this is distinguishable from the federal standard, exclusively raising this special standard for circumstantial cases in state court does not exhaust a federal claim.  *Id.* at 461-62. However, the Florida Supreme Court has determined that when the evidence in a case is "both direct and circumstantial, it is unnecessary to apply the special standard of review applicable to circumstantial evidence cases."  *Pagan v. State*, 830 So.2d 792, 803 (Fla. 2002).

petitioner challenges the sufficiency of the evidence:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "[T]he *Jackson* standard of review is '[e]qually applicable to direct or circumstantial evidence.'" *Martin v. Alabama*, 730 F.2d 721, 725 (11th Cir. 1984) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1358 (11th Cir. 1982)). Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.* at 326.

Under Florida law, "[i]n a trial on the charge of burglary, proof of the entering of such structure or conveyance at any time stealthily and without consent of the owner or occupant thereof is prima facie evidence of entering with intent to commit an offense." § 810.07(1), Fla. Stat. The trial court provided the standard jury instruction regarding this statutory presumption. (Doc. 10, Ex. 13, p. 215.)[6]

Cruz specifically testified that she did not give Roberts permission to enter her home.

-----

[6] Neither the statute nor the standard instruction defines the term "stealthily." § 810.07, Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 13.1. However, "Florida courts have concluded that a defendant acts stealthily when his or her actions are done in a furtive or clandestine manner to avoid discovery." *Lanzo v. State*, 73 So.3d 817, 819 (Fla. 5th DCA 2011) (citing *Baker v. State*, 636 So.2d 1342, 1343 (Fla. 1994) and *M.S. v. State*, 774 So.2d 777, 778 (Fla. 3d DCA 2000)).

The evidence adduced at trial reflects that Roberts' entry was unknown to Cruz until she observed him standing in her bedroom.  In addition, the evidence reflects that the bathroom window was open, and the window screen was removed.  Under these circumstances, Roberts fails to show that no rational trier of fact could find proof of guilt beyond a reasonable doubt.  The state court's rejection of his claim was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.  Roberts cannot obtain relief on Ground One.

**Ground Two: Actual Innocence**: "The Petitioner in this case is actually innocent."  (Doc. 1, p. 13), and **Ground Three: Newly Discovered Evidence:**  "The testimony of newly discovered witness . . . constitutes newly discovered evidence." (Doc. 1, p. 18).

Roberts asserts that he is actually innocent and that newly discovered evidence shows he did not intend to commit an offense inside the home.  (Doc. 1, pp. 11, 13.) Roberts claims that he observed "two Hispanic males run from around the victim's house" and merely intended to warn Barragan Cruz about these individuals. (Doc. 1, p. 13.)[7]

First, Roberts presents what he contends is an affidavit from an eyewitness, LaVern Green.[8]  He claims that Green's statement is newly discovered evidence and supports his actual innocence claim.  Green's affidavit states:

<u>SWORN TRUTH AFFIDAVIT</u>

I, LaVern Green, SOLEMNLY SWEAR, THAT ON NOVEMBER 30, 2007, THE ABOVE DEFENDANT, DAVID L ROBERTS FOR ME. HOWEVER, PRIOR TO LEAVING,  WE BOTH NOTICED TWO HISPANIC MALES COMING FROM AROUND THE PROPERTY OF MY NEIGHBORS,

---

[7]The trial court granted the State's pre-trial motion in limine to prevent testimony from law enforcement officers or Flores that Roberts told them he saw two men on the property. The State asserted that this was impermissible as self-serving hearsay.  (Doc. 13-1, doc. pp. 17-18.)

[8] It appears that Petitioner also refers to the witness as "Tammy."

> MR. GERARDO FLORES AND HIS WIFE MRS. BARRAGAN CRUZ. SINCE
> DEFENDANT, DAVID L. ROBERTS, WAS A FRIEND TO THE RESIDENCE
> OWNER. THE DEFENDANT TRIED TO ALERT, THE OWNERS OF WHAT
> HE AND I HAD SEEN, BY GOING TO THE DOOR RINGING THE
> DOORBELL. NO ONE ANSWERED. THEREFORE HE, THE DEFENDANT,
> DAVID L. ROBERTS, WENT AHEAD TO THE STORE FOR BOTH OF US.
> AFTERWARDS ONCE RETURNED, STAYING AROUND 20 MINUTES, THE
> DEFENDANT LEFT WALKING.   LATER THAT DAY, THE OFFICERS
> MISTAKENLY ARRESTED THE DEFENDANT, DAVID L. ROBERTS.  I
> LaVern Green TRIED TO EXPLAIN WHAT WE SAW, AND WHAT THE
> DEFENDANT, DAVID L. ROBERTS DID AS A FRIEND.    NEITHER
> OFFICER WANTED TO HEAR OR LISTEN TO MR. FLORES. I KNOW FOR
> A FACT IT'S A MISUNDERSTANDING BASED ON MRS. CRUZ INABILITY
> TO UNDERSTAND AND SPEAK ENGLISH.    PLEASE TAKE THIS
> DOCUMENT AS A TRUE, AND CORRECT, SWORN TRUTH AFFIDAVIT.

(Doc. 1-1, p. 2.)  In support of his actual innocence claim, Roberts also provides what he

asserts is an affidavit of Flores.  This affidavit states:

> To who ever it may concern
>      I Geraldo Flores, submit[ ] today 12-19-09 in this letter.  That I was
> court order[e]d to attend David Roberts trial.  If it was up to me I would have
> not attended.  I was and am still willing to drop charges or help Mr. Roberts
> in any other way.

(Doc. 1-1, p. 3.)  To the extent Roberts attempts to assert an independent claim of actual

innocence, it is not a constitutional claim that may be raised as a substantive claim for relief

in a federal habeas proceeding.  *Schlup*, 513 U.S. at 315 ("[A] claim of innocence is . . . 'not

itself a constitutional claim, but instead a gateway through which a habeas petitioner must

pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting

*Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d

1351, 1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based upon

a claim of actual innocence . . . at least in non-capital cases.").

In addition, to the extent Roberts attempts to assert actual innocence to establish

the fundamental miscarriage of justice exception and overcome the procedural default of

any of the other claims asserted in his habeas petition, he fails to make a sufficient showing. An actual innocence claim must be supported "with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324.

Furthermore, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The *Schlup* standard is demanding and will only permit review in an extraordinary case. *House v. Bell*, 547 U.S. 518, 538 (2006).

Roberts fails to present any new reliable evidence to support his assertion. The affidavit provides that Green and Roberts were together when they saw men on the property. Therefore, the information in Green's affidavit would have been known to Roberts prior to and at trial.[9] Additionally, Green's affidavit provides no information to show that Roberts's entry into the home was not unlawful or that the presumption that the entry was made with the intent to commit an offense within the home was inapplicable. With regard to Roberts's presence on the property, it merely states that Roberts rang the doorbell and then went to the store after no one answered the door. It makes no mention of Roberts

_____

[9] Roberts raised a independent claim of newly discovered evidence in his postconviction motion based on Green's affidavit. The state court denied it, finding that "if the witness was with Defendant on the day in question, then Defendant knew of the witness's existence and his potential testimony. Therefore, Defendant has failed to demonstrate that there is any newly discovered evidence in this case." (Doc. 10, Ex. 21, p. 6.) To the extent Roberts attempts to bring the same independent claim in his federal habeas petition, he does not raise a federal constitutional claim. Notwithstanding, he fails to show that the state court's determination was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.

proceeding to any other area of the house, or his actual entry into the home.  Nor does it state that Cruz allowed or was aware of his entrance.  Green's affidavit provides no facts to support the allegation of a misunderstanding between Roberts and Barragan Cruz. Additionally, Flores's affidavit only establishes that Flores was reluctant to testify and remained willing to help Roberts, not that Roberts is actually innocent of burglary.

Accordingly, Roberts does not provide any newly discovered evidence of his actual innocence to establish the fundamental miscarriage of justice exception and overcome the procedural default of claims raised in his habeas petition.  Grounds Two and Three afford no relief on the bases submitted by Roberts.

**Grounds Four, Five, and Six: Ineffective Assistance Of Trial Counsel**

Roberts asserts three claims of ineffective assistance of trial counsel.  He alleges counsel was ineffective for (1) failing to call an exculpatory eyewitness; (2) failing to take depositions or obtain discovery in order to impeach State witnesses; and (3) failing to object to proceeding to trial without discovery or a trial strategy.  These claims are unexhausted because Roberts did not raise them in his postconviction motion.  (Doc. 10, Exs. 14, 15, 20.)  Roberts cannot return to state court to file a successive postconviction motion.  Fla. R. Crim. P. 3.850(h).  Accordingly, these claims are procedurally defaulted.  *Smith,* 256 F.3d at 1138.

Roberts does not establish the applicability of either the cause and prejudice or fundamental miscarriage of justice exception. As addressed, Roberts fails to present any evidence of actual innocence to meet the fundamental miscarriage of justice exception. Roberts states in his reply that he establishes cause for the default because he did not have effective assistance of postconviction counsel, and cites *Trevino v. Thaler*, __U.S.__,

133 S.Ct. 1911 (2013).

*Martinez v. Ryan*, __U.S.__, 132 S.Ct. 1309, 1320 (2012) provides a narrow, equitable exception to the general rule that ineffective assistance of postconviction counsel does not constitute cause to overcome a procedural default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

In *Martinez*, the Supreme Court provided that the exception is available when a petitioner is required to raise ineffective assistance of trial counsel claims in a collateral proceeding, rather than on direct appeal.  132 S.Ct. at 1318.  *Trevino* extended to this rule to situations in which, even if a state's procedures technically permit a defendant to bring a claim of ineffective assistance of trial counsel on direct appeal, "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 133 S.Ct. at 1921.

Assuming all other criteria set forth in *Martinez* are satisfied, to meet the cause and prejudice exception, Roberts is required to demonstrate that his defaulted claims of ineffective assistance of trial counsel are "substantial" in that they have "some merit." *Martinez*, 132 S.Ct. at 1318.

> Neither *Martinez* nor *Trevino* elaborated or applied this standard, but we take the Court's reference to *Miller-El* [*v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)] to mean that it intended that lower courts apply the already-developed standard for issuing a [certificate of appealability], which requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).
> As the Court explained in *Miller-El*, "[a] petitioner satisfies this

standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S.Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014), *cert. denied sub nom.*

*Hittson v. Chatman*, 135 S.Ct. 2126 (2015), *reh'g denied*, No. 14-8589, 2015 WL 4714174

(U.S. Aug. 10, 2015) (footnote omitted).

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Roberts must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.  A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is

very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."   *Richter*, 562 U.S. at 105 (citations omitted).   *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.   466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Ground Four:** "Petitioner was deprived of competent representation to effective assistance of counsel and a fair and impartial jury trial, which his trial lawyer refused to call in eyewitnesses in the Petitioner's behalf that would have totally exonerated him of the crime of burglary."  (Doc. 1, p. 6.)

Roberts claims that counsel should have presented an eyewitness who could have provided testimony to exonerate him.   Roberts's claim is vague; however, it appears to involve potential witness LaVern Green.

Roberts fails to show a substantial claim of ineffective assistance of trial counsel. He does not deny entering the home.   However, Green's affidavit contains no information to which this witness could have testified that would establish Roberts's entry was lawful, or show that the statutory presumption of an intent to commit an offense within the home was inapplicable.   Specifically, even if Green testified that Green and Roberts saw two men on the property and Roberts expressed that he wanted to notify Barragan Cruz of this, as addressed, Green could not testify to the circumstances of Roberts's physical entry into the

house or his intent in entering the house.[10]

Because Roberts does not show that Green would have provided testimony relevant to the elements of burglary, he fails to show that counsel was deficient for not calling Green.  Nor does he demonstrate a reasonable probability that the outcome of trial would have been different had counsel called Green.  As Roberts does establish either prong of *Strickland*, he fails to present a substantial claim of ineffective assistance of trial counsel. Therefore, he does not establish the applicability of the cause and prejudice exception to overcome the default of this claim.

**Ground Five:** "The trial lawyer refused to take depositions and discoveries as well as known impeaching instrument used to impeach state prosecutors witnesses." (Doc. 1, p. 6.)

Roberts alleges that counsel did not obtain discovery and did not have transcripts of depositions with which to impeach State witnesses.  (Doc. 1, pp. 6, 14, 20.)[11]  Roberts asserts that counsel admitted after jury selection he had not received any discovery from the State, and failed to file a notice of discovery.  (Doc. 1, pp. 20-21.)  He claims that this violated his "substantive rights," and that counsel should have moved the court to require the State to provide all discovery.  (Doc. 1, pp. 23, 24.)

This claim is vague and speculative.  Roberts does not specify what information from the discovery in his case counsel should have obtained.   Prior to the start of trial proceedings, on September 2, 2008, counsel discussed obtaining transcripts of Flores and

---

[10] *See* § 90.604, Fla. Stat.  (a non-expert witness "may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter.").

[11] Roberts's allegations with regard to the deposition transcripts appear to refer to witnesses Flores and Barragan Cruz.

Barragan Cruz's depositions.   Counsel told the court that depositions of Flores and Barragan Cruz took place the week prior due to difficulties with serving these witnesses. (Doc. 13-1, doc. pp. 9-10.)  Counsel stated there was some delay in obtaining transcripts, and that he was prepared to file a motion for continuance if the transcripts were not timely completed. (Doc. 13-1, doc. pp. 12-16, 98.)[12]

The jury was selected on September 2, 2008, and trial was held on September 3, 2008.  Whether the transcripts of Flores and Barragan Cruz's depositions were ultimately obtained is unclear from the record.   Counsel's decision not to pursue a continuance on September 3, 2008, suggests that he obtained the transcripts or concluded they were not necessary for trial.   Even assuming the transcripts were not obtained, Roberts fails to allege facts sufficient to support a finding of prejudice.   Roberts does not assert what information from these depositions or other "discovery" counsel could have used for impeachment.[13]  Accordingly, he does not establish a reasonable probability the outcome of trial likely would have been different had counsel used the depositions to cross-examine these witnesses. *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Absent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial,' the petitioner is

---

[12] While Roberts cites page ninety-four of the trial transcript in support of his claim that counsel admitted he did not file a notice of discovery and did not receive any discovery, this portion of the record does not support Roberts's claim.  (Doc. 13-1, doc. p. 98.)

[13] In his reply, Roberts claims that he entered through a sliding glass door in the back of house to check on Barragan Cruz.  He appears to assert that counsel failed to establish these facts through cross-examination. (Doc. 11, p. 9.) But Roberts presents no evidence to support this assertion, and does not allege that such information would have been available through the discovery or depositions. Moreover, the record reflects that Flores was not at home at the time of the offense and that when Barragan Cruz first observed Roberts, he was already standing in her bedroom.  Therefore, Roberts does not explain how counsel could have obtained favorable testimony on this matter through cross-examination of Flores and Barragan Cruz.

unable to show prejudice necessary to satisfy the second prong of *Strickland*.") (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)).

Furthermore, Roberts's vague, speculative, and unsubstantiated allegations cannot sustain a claim of ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Roberts does not present a substantial claim of ineffective assistance of trial counsel.  Accordingly, he does not show that the cause and prejudice exception applies to overcome the default of Ground Five.

**Ground Six:** "Counsel never objected to moving forward to trial without properly preparing a trial strategy and the proper documents to do so."  (Doc. 1, p. 14.); "Trial Counsel then could have and should have petitioned the Court to order the State prosecutor to disclose all discovery to Trial Counsel as set out in Florida Rules of Criminal Procedure 3.140(n), so Trial Counsel could prepare for trial and discuss the State's case with Defendant prior to making the informed choice to proceed to trial."  (Doc. 1, p. 22.)

Roberts claims that counsel should have objected to proceeding with trial absent necessary documents and trial strategy, and claims that counsel should have moved to obtain discovery from the State before proceeding to trial.  As with the argument raised in Ground Five, Roberts's assertion is wholly speculative.  Roberts fails to identify the "discovery" or "documents" that counsel allegedly did not possess at trial.  Nor does Roberts present any argument or evidence as to what such documents would have revealed, or how there is a reasonable probability the outcome of trial likely would have been different had counsel obtained them.  Once more, Roberts makes no showing of prejudice with regard to counsel's alleged failure. He does not identify any specific

information contained within the discovery or the deposition transcripts.  Thus, he cannot establish a reasonable probability that the outcome of trial would have been different had counsel utilized such unspecified information.  His vague, unsubstantiated claim cannot support an allegation of ineffective assistance of counsel.  *See Hill*, 474 U.S. 52; *Tejada*, 941 F.2d at 1559.

Nor does Roberts explain his assertion that counsel lacked a trial strategy.  Counsel presented an argument that the evidence only supported a conviction for trespassing because, as Roberts now alleges, the evidence did not show he intended to commit an offense within the home.  (Doc. 10, Ex. 13, pp. 183, 196-203.) Roberts does not assert what other strategy or defense counsel should have pursued.  Because Roberts fails to demonstrate a substantial claim of ineffective assistance of trial counsel, he cannot show that the cause and prejudice exception applies to overcome the default of Ground Six.

**Grounds Seven and Eight: State Court Error**

**Ground Seven:** "Petitioner was forced to attend trial absent transcribed depositions or discovery to adequately prepare a competent defense in his behalf . . . the trial court error is that the Judge did acknowledge on the face of the record that the discovery rule violation of probation and did not order a defense continuance."  (Doc. 1, p. 14).

Roberts claims that the trial court erred by not ordering a continuance of trial despite an alleged discovery violation.  However, Roberts fails to allege any federal constitutional deprivation.  Accordingly, this argument is not cognizable in Roberts's federal habeas petition.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas corpus relief is not available to correct errors of state law); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension).  Roberts cannot obtain relief on Ground Seven.

**Ground Eight:**  "Trial court further refused to afford the Petitioner due process by refusal to hold an evidentiary hearing to address the facially sufficient meritorious claims supported by the face of the record constitutes a complete miscarriage of justice and unlawful continuation of an illegal detention."  (Doc. 1, p. 14.)

This claim is interpreted as an allegation that the state postconviction court erred when it summarily rejected Roberts's postconviction motion instead of holding an evidentiary hearing on his claims.  These allegations are insufficient to sustain a claim for federal habeas relief because they do not challenge the validity of his conviction.  *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) ("'[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy.'") (quoting *Carroll v. Sec'y DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009)); *Quince v. Crosby*, 360 F.3d 1259, 12662 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).  Accordingly, this claim warrants no relief.

**Grounds Nine and Ten: Prosecutorial Misconduct**

**Ground Nine:** "[T]he State forced the victim to testify further violated due process in violation of the 14th Amendment." (Doc. 1, p. 19.)

Roberts appears to assert that the State committed a federal due process violation by requiring Flores to testify contrary to his wishes.  He relies on Flores's affidavit, which provides that Flores would not have been present at trial "if it was up to [him]", and that he was willing to assist Roberts.  This claim of prosecutorial misconduct is unexhausted, as Roberts did not raise it on direct appeal.  (Doc. 10, Ex. 9.)  Roberts cannot return to state court to file a successive, untimely direct appeal.  *See* Fla. R. App. P. 9.140.  Accordingly,

the claim is procedurally defaulted.  *Smith*, 256 F.3d at 1138.  Roberts fails to establish the applicability of either the cause and prejudice or fundamental miscarriage of justice exception.  *Id.*

Notwithstanding the default, Roberts cannot obtain relief because he fails to establish a federal due process violation.  Roberts simply makes no showing that the State was not entitled to subpoena or call Flores, who provided testimony relevant to establishing Roberts's identity, familiarity with the property, presence near the property shortly after the offense, and apprehension by police.  Moreover, even if Flores did not want to testify, Roberts establishes no basis to find that the State's calling Flores violated *Roberts's* federal due process rights.  This claim cannot provide federal habeas relief.

**Ground Ten:** "State prosecutor's acts and omissions to conduct a trial without a discovery or deposition, violated the Petitioner's substantial rights which is a plain error clear from the face of the record. . . ."  (Doc. 1, p. 24.)

Roberts argues that the State violated his rights by proceeding to trial without discovery or depositions.  This claim is vague and generalized.  To the extent it merely concerns an application of state procedural rules, it is not cognizable in Roberts's federal habeas petition.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

However, to the extent Robert's argument can be construed to raise the claim asserted in his postconviction motion that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) by failing to disclose the statement of LaVern Green, Roberts is not entitled to relief.

The state court rejected this argument when Roberts raised it in his postconviction motion:

In his last ground, Defendant asserts that the State violated *Brady* and *Giglio* by failing to disclose the statement of LaVern Green.   In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  In *Giglio*, the Court extended this rule to the nondisclosure of evidence affecting a witness's credibility.   *See Giglio*, 405 U.S. at 154.

To prove that a Brady violation has occurred, a defendant must demonstrate that "(1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence has been suppressed by the State, either wilfully or inadvertently; and (3) prejudice to the defendant has ensued."  *Maharaj v. State*, 778 So.2d 944, 953 (Fla. 2000).  Moreover, "a *Brady* claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant."  *Occhicone v. State*, 768 So.2d 1037, 1042 (Fla. 2000).  Thus, because Defendant clearly knew about the witness, as discussed above, it cannot be said that the State withheld this information from Defendant. Therefore, this argument lacks merit and is denied.

(Ex. 21, pp. 6-7) (court's footnotes omitted).   The record supports the state court's

conclusion.[14]

To establish a *Brady* violation, [a petitioner] must show that (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

*United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002).  Again, Green's affidavit

indicates that Green and Roberts were together on the day of the offense when they saw

two men at the Flores and Barragan Cruz residence.  Thus, the existence of Green as a

potential defense witness, and the content of Green's statement, would have been known

---

[14] As discussed *supra*, note 9, the state court determined that Green's affidavit did not constitute newly discovered evidence because the information it provided would have been known to Roberts.

to Roberts.  Accordingly, Roberts does not show that the State committed a violation under *Brady* for allegedly withholding Green's statement.[15]

As Roberts makes no showing of any discovery violation by the State, he fails to establish that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. This ground warrants no relief.

**New Claims In Roberts's Reply**

Finally, Roberts raises new claims of ineffective assistance of counsel in his reply. He asserts that counsel was ineffective for (1) failing to preserving the record for appeal; (2) failing to establish on cross-examination of Detective Greer that no evidence was taken from the crime scene; and (3) failing to argue at trial that Officer Nickolas Ligman did not follow protocol in the investigation of this case.  (Doc. 11, pp. 8-9.)  Roberts may not raise new claims in the reply.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted).  Accordingly, he cannot obtain relief on these claims.

The Court therefore ORDERS

That Roberts's Section 2254 petition (Doc. 1) is DENIED.  The Clerk is directed to enter judgment against Roberts and to close this case.

_____

[15] To sustain a *Giglio* claim, "a petitioner 'must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material – i.e., that there is a reasonable likelihood that the false testimony could have affected the judgment.'" *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)). Roberts does not explain how *Giglio* applies to his claim, as he makes no allegation that the State used or failed to correct perjured testimony.  Nevertheless, he fails to establish any *Giglio* violation.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

IT IS FURTHER ORDERED that Roberts is not entitled to a certificate of appealability (COA).   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.   *Id.*   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   *Id.* at § 2253(c)(2).   To make such a showing, Roberts "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   Roberts has not made the requisite showing in these circumstances.

Finally, because Roberts is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

ORDERED in Tampa, Florida, on October 9, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

David L. Roberts
Counsel of Record